**In re NORTHERN DISTRICT OF CALI-
FORNIA "DALKON SHIELD" IUD
PRODUCTS LIABILITY LITIGATION.**

No. C–80–2213 SW.

United States District Court,
N. D. California.

Anthony J. Klein, DiGiorgio, Davis & Klein, Bakersfield, Cal., Conklin, Davids & Friedman, San Francisco, Cal., William A. Hensley, Sherwood & Hensley, Wichita, Kan., Stanley Bell, Thomas J. Brandi, Abramson & Bianco, San Francisco, Cal., Louis M. Bernstein, Oakland, Cal., Kent A. Russell, San Francisco, Cal., Appert & Pyle, Minneapolis, Minn., Gary H. Silverman, Chubb & Silverman, Sparks, Nev., Ronald P. Schneider, Huster & Schneider, San Francisco, Cal., Rodney A. Klein, Sacramento, Cal., Ralph B. Wegis, Taft, Cal., Paul Melodia, Walkup, Downing, Shelby, Bastian, Melodia, Kelly & O'Reilly, San Francisco, Cal., Bradley Post, Post, Syrios & Bradshaw, Wichita, Kan., Douglas E. Bragg, Denver, Colo., for plaintiffs.

Thomas W. Kemp, Harris Wagenseil, Barbara L. Gately, Washburn, Kemp & Wagenseil, Robert C. Gebhardt, Fern M. Smith, Frank Z. Leidman, Bronson, Bronson & McKinnon, San Francisco, Cal., Robert H. Patterson, Jr., Gordon H. Rosser, Jr., Alexander H. Slaughter, Anne Marie Whittemore, Franklin M. Tatum, III, McGuire, Woods & Battle, William R. Cogar, Clifford W. Perrin, Jr., Stephen W. Brewer, Mays, Valentine, Davenport & Moore, Richmond, Va., Kevin Dunne, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for defendant A. H. Robins Co., Inc.

## ORDER CONDITIONALLY CERTIFYING CLASS ACTIONS

SPENCER WILLIAMS, District Judge.

### INTRODUCTION

This action involves the claims of thousands of women across the United States that they have been injured by an allegedly defective intrauterine device called the Dalkon Shield. The device was manufactured by defendant A. H. Robins Company and invented by defendants Hugh Davis and Irwin Lerner.

The plaintiffs in these actions allege they have sustained various injuries from their use of the Dalkon Shield including uterine perforations, infections, pregnancy, spontaneous abortion, fetal injuries and hysterectomies. The plaintiffs predicate their right to recover against various defendants on theories of negligence, strict products liability, breach of warranty, conspiracy and fraud. In the vast majority of these actions, the plaintiffs seek substantial sums in punitive damages.

In 1975, these actions were transferred to a single district for coordinated pretrial proceedings. In so doing, the Judicial Panel on Multidistrict Litigation held that the complaints contained a commonality of factual issues concerning the design, testing, manufacturing, labeling, and inspection of the Dalkon Shield.[1] On June 17, 1980, this court consolidated all actions before it for pretrial proceedings.[2]

Approximately one year ago, this court presided over a single jury trial in one of these actions that lasted nine weeks. Since

---

1. *In re A. H. Robins Co. "Dalkon Shield" IUD Products Liability Litigation*, 406 F.Supp. 540, 541 (Jud.Pan.Mult.Lit.1975).

2. As of the time of this order, this court has 153 Dalkon Shield cases pending before it.

that time, and in light of its extended experience with this litigation, the court conducted a series of status conferences to discuss methods for achieving economies of time and expense in the trial of these actions. After consideration of alternatives such as videotaping witnesses, consolidation and test cases, this court concluded that class action certification represents the most reasonable solution to the repetitive nature of this litigation.

On February 9, 1981, the court ordered briefing from all parties on the class certification issue. At that time, the court noted that cases such as these present the obvious inability of our traditional mode of case-by-case litigation to deal with repetitive litigation of the same underlying facts. Each of these cases takes several months to try and involves many of the same witnesses for each trial. At the present time, some 1,573 suits involving claims for compensatory damages well over $500 million are pending against defendant A. H. Robins.[3] The potential for the constructive bankruptcy of A. H. Robins, a company whose net worth is $280,394,000.00, raises the unconscionable possibility that large numbers of plaintiffs who are not first in line at the courthouse door will be deprived of a practical means of redress.

A federal class action, to the extent that it is possible under Federal Rule of Civil Procedure 23, appears to be the most equitable solution to the monumental problems posed by this litigation.

It is clear from a reading of the history behind Rule 23 that it was intended primarily to foster judicial economy within a framework that effectively protects the rights of individual litigants.[4] Even before the enactment of Rule 23, equity courts recognized that class treatment was appropriate when judicial efficiency demanded the elimination of multiple suits arising from the same facts and questions of law.[5] Likewise, it can hardly be said that modern Rule 23 necessarily forecloses the application of class action concepts to cases such as this one in which repetitive litigation based on a single set of facts threatens to cause irreparable harm both to the defendant and more importantly to thousands of plaintiffs left with a legal right but potentially no adequate remedy.

In response to these problems, the court invited briefs and conducted hearings on May 20, 1981 and June 3, 1981 on the class action issue. After careful consideration of these briefs and the arguments of all counsel present, the court hereby finds that all prerequisites for class certification under Rule 23(a) and 23(b)(1)(B) have been satisfied and conditionally certifies a nationwide class[6] consisting of all persons who, prior to an as yet undetermined date certain, file written claims for punitive damages against A. H. Robins Company relating to the Dalkon Shield intrauterine device.

This court further finds that the prerequisites for class certification under Rule 23(a) and 23(b)(3) are satisfied and conditionally certifies a class action on all common issues of liability as to all persons who have filed suit, or will file suit before the commencement of the trial of this case, relating to the Dalkon Shield intrauterine device in the United States District courts located in the state of California.

This court further orders that all cases involving the Dalkon Shield intrauterine device which are filed in the United States

---

3. *See* Affidavit of R. P. Wolf, Secretary and Assistant General Counsel of A. H. Robins Company. (June 19, 1981).

4. *See* Advisory Committee Note to the 1966 Amendments to Rule 23, 39 F.R.D. 98 (1966); 7 Wright, Miller & Kane, Federal Practice and Procedure, § 1751 (1980 ed.).

5. *See, e. g., Smith v. Swormstedt,* 57 U.S. (16 How.) 288, 14 L.Ed. 942 (1853); 7 Wright, Miller & Kane, Federal Practice and Procedure, § 1751 (1980 ed.).

6. In *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the United States Supreme Court expressly upheld the creation of nationwide classes when the trial court, in its discretion, determined that it was appropriate. *Id.* at 702–03, 99 S.Ct. at 2558–59. This court is sensitive to the ongoing litigation relating to the Dalkon Shield. However, nationwide relief is particularly appropriate, if not essential, in a class action maintained under the limited fund concept embodied in Fed. R.Civ.P. 23(b)(1)(B).

District Court for the Northern District of California be consolidated for trial on the liability issues pursuant to Federal Rule of Civil Procedure 42(a). As part of the Final Trial Order filed in a separate action consolidated herein, the court shall order the action severed for trial on the issues of affirmative defenses, if any, causation and damages.

The following constitutes a brief explanation of the court's reasoning on these matters. The court will issue a full memorandum of opinion on this matter hereafter.

### COURT CERTIFICATION OF CLASS ACTION

■ The case law and commentary on federal class actions emphasize the wide range of discretion accorded the trial court in overseeing all aspects of class action litigation and particularly in determining whether to certify a class in the first instance.[7]

■ Many of the trial court's responsibilities in maintaining a class action may be exercised even though no party to the lawsuit requests such action. For example, the district judge has an obligation to *sua sponte* determine whether an action shall proceed as a class action notwithstanding a motion from either party.[8] The court can, on its own motion, limit the size of a class action, deleting members with smaller claims.[9] The court is also able to *sua sponte* dismiss class allegations that were already certified.[10]

While the language of Rule 23 generally refers to actions "brought" or "maintained" as class actions, nothing in the rule prohibits *sua sponte* class certification. In fact, Professor Moore states in his text on federal practice that the trial court's role under

Rule 23 contemplates situations in which it may transform an action commenced as a non-class action into a class action on its own motion.[11]

Federal Rule 23 is a rule of civil procedure, not a rule of jurisdiction. The Federal Rules of Civil Procedure, including Rule 23, were promulgated by the Supreme Court and not by Congress. Plainly, courts tried cases as class actions in the interest of judicial efficiency and economy long before the adoption of Rule 23.[12] Therefore, the trial court in exercising its equity power may certify a class even when no individual plaintiff fashions his complaint seeking such relief.

This case presents the unusual situation where court ordered class treatment is appropriate. In this action, plaintiffs are represented by many different law firms, each with an individual interest in securing a punitive damage award for their clients. The court, on the other hand, is in the position of being able to observe the spectrum of cases filed throughout the country with only the *collective* interest of the plaintiffs in mind. Clearly with respect to the issue of punitive damages, the most equitable approach as to all present and future plaintiffs is to provide equal access to a recovery fund.

### CERTIFICATION OF NATIONWIDE CLASS ON PUNITIVE DAMAGES

■ To qualify for class certification, all four prerequisites of Rule 23(a) must be satisfied and, in addition, the proposed class must come within one of the three categories enumerated in Rule 23(b). With respect to the four requirements of 23(a), the court specifically finds as follows:

7. See, e. g., *Payton v. Abbott Laboratories*: An Analysis of the Massachusetts DES Class Action Suit, 6 Amer.J. of Law & Medicine 243, 261 (Summer 1980); *Gardner v. Westinghouse Broadcasting Co.*, 559 F.2d 209, 212 (9th Cir. 1977).

8. *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976); *Stevenson v. Smith*, 73 F.R.D. 79, 81 (D.Del.1976).

9. *State of Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484, 493 (N.D.Ill.1969).

10. *Roman v. ESB, Inc.*, 550 F.2d 1343 (4th Cir. 1976).

11. 3B Moore's Federal Practice, ¶ 23.02–2, p. 23–102 (2d ed. 1980). *See also Stoddard v. Ling-Temco-Vought*, No. 72–1294 (C.D.Cal. Jan. 27, 1981). *Cf. Richmond v. Ivans*, 121 U.S. 27, 51 (1887).

12. *Hom v. Tenants of Bromsgrove*, 1 Vern. 22, 23 Eng.Rep. 277 (Ct.Ch.1681); 7 Wright, Miller & Kane, Federal Practice and Procedure, § 1751 (1980 ed.).

1. The class is so numerous that joinder of all members is impracticable in that there are more than 1600 cases against Robins presently pending in federal and state courts, most of which purport to assert claims for punitive damages.

2. There are questions of law and fact common to the class with respect to the liability of Robins for punitive damages by reason of its conduct in the manufacture and marketing of the Dalkon Shield.

3. With respect to the issue of punitive damages, the claims of any representative party to be designated by the court after consultation amongst counsel for plaintiffs will be typical of the class. In fact, representative parties are to comprise a gamut of the existing injuries and claims against the company. As such, the conclusion as to the degree of punishment to be accorded this defendant is capable of determination in one trial.

4. Representative parties to be designated by the court, potentially representing various subclasses that may be established in this action, can fairly and adequately protect the interests of the class.

Furthermore, this court finds that this action is appropriately maintained under Rule 23(b)(1)(B) which states that an action may be maintained as a class action when the prosecution of separate actions would create a risk of:

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; . . ."

This court specifically finds that separate actions inescapably will alter the substance of the rights of others having similar claims. In the Dalkon Shield actions presently on file against A. H. Robins, the punitive damages specifically claimed total some $2,350,597,000.00.[13] Moreover, to date, jury verdicts for punitive damages against the defendant company have been entered for $75,000.00 and $6,200,000.00 respectively. It goes without saying that a figure representing some element of punitive damages has entered into the numerous actions that have been settled.

It is clear that the amount of punitive damages sought far exceeds the available net worth of the company. This fact poses two very real threats if actions on this issue continue on an individual basis: 1) The company will be unable to respond to claims for punitive damages due to actual or constructive bankruptcy; or 2) At some point in the future, courts could rule that the aggregate sum already assessed against the defendant company in punitive damages was such that as a matter of law the company had been sufficiently punished and therefore punitive damage claims would be dismissed as a matter of law.[14]

■ In either event, the limited fund available to satisfy all claims for punitive damages merits certification of a nationwide class under Rule 23(b)(1)(B) in order to equitably distribute any such recovery from a general fund recoverable by any claimant who successfully pursues her claim on an appropriate theory before a jury or in settlement.[15]

■ Because this action is authorized by Rule 23(b)(1), the stringent notice requirements of Rule 23(c)(2) are inapplicable.

13. *See* Affidavit, *supra*. n. 3.

14. *Cf. Roginsky v. Richardson Merrell, Inc.*, 378 F.2d 832, 840 (2d Cir. 1967).

15. It is clear that one of the primary examples of an action appropriate for (b)(1)(B) treatment is where members of a class have claims against a fund that may prove insufficient to satisfy all of them. In cases such as this, individual suits could well exhaust the fund before all members were able to protect their interests. 7A Wright, Miller & Kane, Federal Practice and Procedure, § 1774; Advisory Committee Note to the 1966 Amendments to Rule 23, 39 F.R.D. 98, 101 (1966).

The court agrees with Judge Rubin when he stated in *Coburn v. 4–R Corp.*, 77 F.R.D. 43, 45 (E.D.Ky.1977):
"In no event, however, should this litigation become an unseemly race to the courthouse door with monetary prizes for a few winners and worthless judgments for the rest."

However, Rule 23(d)(2) empowers the court to direct that notice be given "to some or all of the members of any step in the action..." Here, the court directs that notice of this class action shall issue by individual mailing by the defendant to all plaintiffs in pending litigation in federal or state courts who have asserted claims against A. H. Robins Company relating to the Dalkon Shield and to all persons who have given Robins or its insurer notice of claims relating to the Dalkon Shield. The court directs that notice of this class action also shall issue by individual mailing to all plaintiffs in future litigation in federal or state court who assert claims against Robins relating to the Dalkon Shield and to all persons who give Robins or its insurer notice of claims relating to the Dalkon Shield until such time as this class action has terminated.

## 23(b)(3) CLASS ACTION IN CALIFORNIA FEDERAL CASES

The court specifically finds that a limited class of all plaintiffs who file Dalkon Shield cases in the Federal courts up to an including the commencement of the trial of this action meets the prerequisites of Rule 23(a) and additionally satisfies the balancing factors of Rule 23(b)(3).

The potential class of several hundred federal litigants obviously satisfies the numerosity requirement contained in Rule 23(a). Moreover, each of the Dalkon Shield cases filed in California federal courts contains common issues of fact and law relating to issues of negligence, strict products liability, the adequacy of warnings at relevant time periods,[16] breach of warranty, fraud and conspiracy.[17] Finally, representative parties are capable of adequately and fairly protecting the interests of all plaintiffs in this case.

■ A statewide class also satisfies the prerequisites contained in Rule 23(b). While it is true that certain factual issues relating to individual damages and reliance vary between groups of plaintiffs, this court finds that common questions on the primary theories of liability predominate. In fact, this court recognizes that certain issues such as causation and damages vary from individual to individual and therefore only certifies the common liability issues pursuant to Rule 23(c)(4). Once findings of fact and conclusions of law are made with respect to the various liability issues relating to the Dalkon Shield, individual damage cases will be sent back to their original courts and tried separately for each plaintiff.[18]

The court has carefully considered the guidelines provided in Rule 23(b)(3) that are pertinent to the decision to certify a class under this subsection. The court specifically finds as follows:

1. The interest of members of the class in controlling their individual lawsuits is outweighed by the obvious superiority of a single determination of issues for all cases. A single class action on the liability issues will reduce overall costs of litigation for all plaintiffs and result in the appearance of several key witnesses who otherwise might not be inclined to testify in numerous individual lawsuits.

2. The effect of a California class action for federal plaintiffs on already-commenced litigation will not be adverse to the rights of the individual litigants. This class encompasses hundreds of plaintiffs who face

16. It is entirely possible that the action may have to be divided into subclasses pursuant to Rule 23(c)(4)(B) as to individuals who had access to different warnings at different time periods.

17. Even in *Rosenfeld v. A. H. Robins*, 63 A.D.2d 11, 407 N.Y.S.2d 196, 199, where the court denied class certification as to all issues of liability and damages, the court admitted that: "it would be possible to determine several important factual issues on a class basis, including (1) the existence of a defect or defects in the Dalkon Shield, (2) the nature of the representations and warranties made with respect to the device and (3) whether the warranties and representations were false."

18. It has been commonly recognized that class actions may be maintained on the liability issues alone and that the necessity of calculation of damages on an individual basis should not preclude class determination. Freeman, *Current Issues in Class Litigation*, 70 F.R.D. 251, 267–68 (1976).

the real possibility of waiting years before their cases would come to trial in the district court. The possibility of such delay places litigants in the difficult position of precipitously accepting initial settlement offers or postponing the determination of their rights for several years.

3. The Northern District of California is a desirable forum for instituting Dalkon Shield litigation. This court is familiar with the history of this litigation and presently entertains over 150 Dalkon Shield cases. Additionally, the court has already tried one of the cases and has first-hand familiarity with this litigation.

4. At this time, the envisioned (b)(3) class action is manageable and can be accomplished with the creation of relatively few subclasses under Rule 23(c)(4). While this case may present many difficult issues regarding subclasses, admission of evidence and appointment of class counsel, it is well-recognized that "[n]ovel administrative challenges cannot, alone, justify rejection of a class suit." [19]

■ A limited, state-wide class action as to all federal plaintiffs is the superior method for trying the liability issues in these cases. Class action treatment would give this court full control over the entire litigation.[20] Any determinations in the class action would bind the defendants as well as all members of the class. By use of subclasses to be certified when necessary, claims which may only include certain defendants or certain factual issues may be grouped.[21] The concurrent consolidation of these cases for joint trial with the class action along with the limitation of the class to California federal plaintiffs to avoid choice of law and state court opt-out problems render this class action concept a fair and manageable adjudication of this controversy.

Pursuant to the requirement of Rule 23(c)(2), the court directs that notice be given to all members of the class in a similar fashion to that directed in the certification of the (b)(1)(B) class above.

## CONCLUSION

Class action treatment of the punitive damage and liability issues as outlined by the court provides the greatest flexibility and the best opportunity for judicial economy and economy of time and money in the conduct of this repetitive and lengthy litigation.

Pursuant to Rule 23(d)(1), the court directs plaintiffs' counsel to confer for the purpose of recommending to the court specific plaintiffs and counsel in these consolidated actions to be designated class representatives and class counsel. Such recommendation shall be made to the court on or before August 19, 1981. Class counsel shall confer with counsel for defendants for the purpose of recommending to the court a procedural plan for trial of the class actions in the Fall of this year.

This court intends to certify these issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). It is obvious that the certification opinion that the court will issue involves a controlling question of law and upon which there is some ground for

---

**19.** 3B Moore's Federal Practice, ¶ 23.45[4.–4], p. 23–893.

**20.** Defendant A. H. Robins suggests consolidation under Rule 42(a) as a superior method of treatment than a (b)(3) class action. This court disagrees. In practice, consolidated actions preserve their separate identities and all parties before the court retain their individual litigation rights. Moreover, procedures for accomplishing the transfer and consolidation of cases are not as extensive or guaranteed as the provisions of Rule 23(b)(3). As such, class treatment is the superior option. See Brahn, Diethystilbestrol: Extension of Federal Class Action Procedures to Generic Drug Litigation, 14 U.S.F. Law Review 461, 487–88 (Spring 1980).

**21.** This court is aware of the Ninth Circuit class action rule laid down in La Mar v. H. B. Novelty & Loan Co., 489 F.2d 461, 465–66 (9th Cir. 1973). This rule, however, is not dispositive of class treatment of the federal cases in California. This certification order is conditional and awaits further conferences with lawyers for the class and the defendants regarding the creation of subclasses as to claims against particular defendants. Additionally, the La Mar decision specifically excepted the case of a conspiracy between defendants as that alleged herein. La Mar at 466. See also Krehl v. Baskin-Robbins Ice Cream Co., 78 F.R.D. 108, 115 (C.D.Cal.1978).

**1196**

difference of opinion. However, certifying these issues at this time is premature. Until the court, with the aid of counsel for both the class and the defendants, determines the scope of this class, the final notice provisions, the creation of subclasses, the manner in which this case will be tried and when the class will close, there is an inadequate record on which the Court of Appeals can review this court's decision. Accordingly, this court will withhold its § 1292(b) certification until early this Fall.

To expedite consultation among counsel respecting the development of procedures for the trial of the class actions, this order has been issued in advance of the court's full memorandum opinion which shall hereafter issue.

This order is subject to amendment upon motion of any party for good cause shown.

IT IS SO ORDERED.