## In re DALKON SHIELD PUNITIVE DAMAGES LITIGATION.

### Civ. A. No. 84–0484–R.

United States District Court,
E.D. Virginia,
Richmond Division.

July 22, 1985.

Murray J. Janus, Stephen W. Bricker, Bremner, Baber & Janus, Richmond, Va., for plaintiffs.

Alexander H. Slaughter, J. Waller Harrison, Barbara Ann Williams, McGuire, Woods & Battle, Richmond, Va., James Dabney Miller, King & Spalding, Washington, D.C., Griffin B. Bell, King & Spalding, Atlanta, Ga., William R. Cogar, Mays, Valentine, Davenport & Moore, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Pending before this Court is a motion by A.H. Robins Company, Inc. ("Robins") to certify a nationwide class action. The proposed class action would determine whether Robins is liable—for punitive damages [1]—to plaintiffs throughout the nation arising out of their use of the Dalkon Shield (an intrauterine contraceptive device) and, if liable, the extent of such liability. The issue presently before the Court in relation to this motion concerns collateral estoppel: specifically, the collateral estoppel effect on Robins of the decision by the Court of Appeals for the Ninth Circuit in *In re Northern District of California Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 850–52 (9th Cir.1982), (hereinafter "Dalkon Shield"), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). That decision reversed a district court's certification one year earlier, *see Dalkon Shield*, 526 F.Supp. 887, 896–900 (N.D.Cal.1981), of a class virtually identical to the class that Robins asks this Court to certify.[2]

The parties have thoroughly briefed and vigorously argued the issue, and the matter is now ripe for disposition.

## BACKGROUND.

The story of the products liability litigation arising out of the Dalkon Shield is a long one, and it need not be recounted in

---

1. The proposed class would deal only with Robins' liability for punitive damages. Robins does not seek to certify here a class action to determine its liability for compensatory damages.

2. The district court certified a class consisting of "all persons who have asserted claims for punitive damages against A.H. Robins Company re-

lating to the Dalkon Shield...." *Dalkon Shield*, 526 F.Supp. at 921.

Here, the proposed class is slightly broader. Robins seeks to certify a class consisting not only of all persons who have asserted claims for punitive damages, but of "all persons who allege injury arising out of the use of the Dalkon

any detail here.[3] With respect to the collateral estoppel issue, however, the following facts provide some helpful background.

The nationwide punitive damages class was first certified conditionally by the district court, which raised *sua sponte* the issue of certifying such a class. *See Dalkon Shield*, 521 F.Supp. 1188, 1192 (N.D. Cal.1981). The legal basis for a nationwide punitive damages class was the so-called "limited fund" theory and Fed.R.Civ.P. 23(b)(1)(B). That subsection provides for class certification where:

> the prosecution of separate actions by individual class members would create a risk of adjudication with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests....

and where the prerequisites enumerated in Fed.R.Civ.P. 23(a) for maintaining a class action are also met. The district court had concluded that the threat of massive punitive damages awards to some early-prevailing class members would preclude any punitive damage awards to later-prevailing class members, due to the actual or constructive bankruptcy of Robins, or due to the possibility that a court could rule that the punitive damages already assessed had sufficiently punished Robins. *See Dalkon Shield*, 521 F.Supp. at 1193. Accordingly, the district court believed that Robins had only a "limited fund" from which to pay out punitive damage awards, making appropriate the certification of a nationwide punitive damages class under 23(b)(1)(B).

The day following the district court's conditional certification of a class action on its own motion, Robins also moved to certify a nationwide punitive damages class action. *See* 526 F.Supp. at 895. *See id.*

Five months later, the district court granted Robins' motion, and denied motions from Dalkon Shield plaintiffs throughout the nation to decertify the class of the national·significance of its order and the other factors making interlocutory appeal appropriate, the district court then certified, for interlocutory review, its order certifying the class action.[4]

The Court of Appeals for the Ninth Circuit reversed the district court across the board. It concluded that class action treatment was inappropriate because the prerequisites for any class action, set out in Fed.R.Civ.P. 23(a), had not been satisfied. *See Dalkon Shield, supra*, 693 F.2d at 850–51. It also concluded that the district court had erred in finding that a 23(b)(1)(B) class action was appropriate. In that regard, the Court of Appeals focused chiefly on the lack of sufficient evidence—or even of a preliminary fact-finding inquiry—concerning Robins' actual assets, insurance, settlement experience, and continuing exposure. *Id.* at 852. It is this decision that gives rise to the assertions that Robins is collaterally estopped from seeking again a nationwide punitive damages class in the Dalkon Shield cases.

THE PARTIES' ARGUMENTS.

Robins contends that the Ninth Circuit decision does not preclude it from certifying a nationwide punitive damages class here. Robins' primary line of argument is, first, that the Ninth Circuit did not actually determine that a nationwide punitive damages class of Dalkon Shield plaintiffs fails to meet the prerequisites of rule 23(a). Robins then acknowledges that the Ninth Circuit determined that the Rule 23(b)(1)(B) requirements were not met; however, Robins argues, that determination should not be binding against it here because it had no full and fair opportunity to litigate the existence of a limited fund so as to satisfy

---

Shield, *or who may allege such injury in the future"* (emphasis added).

**3.** For a brief history, see the district court's opinion in *Dalkon Shield*, 526 F.Supp. at 892–893.

**4.** The order certified two classes. The class relevant here was the nationwide punitive damages class. The district court had also certified a statewide class on *all* issues of liability. The order establishing both classes was certified for interlocutory appeal.

the requirements of 23(b)(1)(B), and because the factual and legal circumstances relevant to the Ninth Circuit's 23(b)(1)(B) determination have changed radically. Robins also argues that the Ninth Circuit did not determine that a nationwide punitive damages class action could never be maintained in the Dalkon Shield litigation; rather, so it argues, the Ninth Circuit only held that—on the record before it—such a class was inappropriate. Finally, Robins argues that even if collateral estoppel would ordinarily apply, it should not apply here because of the adverse effects it could have on the public interest.

Plaintiffs attack virtually all of the points Robins raises against collateral estoppel. The Court need not address each point Robins has raised, however, because it has concluded that: (i) the Ninth Circuit determined that a nationwide punitive damages class in the Dalkon Shield litigation fails to meet the prerequisites of Rule 23(a); (ii) the Ninth Circuit's determination with respect to the Rule 23(a) prerequisites is effective for purposes of collateral estoppel even though the panel also determined that a class action was inappropriate because it failed to meet the requirements of Rule 23(b)(1)(B); (iii) Robins had a full and fair opportunity to litigate the 23(a) prerequisites; (iv) the Ninth Circuit's determination with respect to those prerequisites has not been undermined by any dramatic changes in the relevant legal or factual circumstances; and (v) the public interest does not justify ignoring the collateral estoppel effects of the Ninth Circuit's determination.

DISCUSSION.

*I. General Principles of Collateral Estoppel.*

█ Collateral estoppel requires that at least four elements be satisfied before an order pertaining to an issue in one action can preclude a party to that action from re-litigating the issue in another proceeding: first, that the issue sought to be precluded must be the same as that involved in the prior action; second, that the issue must have been actually litigated; third, that it must have been determined by a valid and final judgment; and fourth, that the determination must have been essential to the prior judgment. *See In re Piper Aircraft Distribution Systems Antitrust Litigation,* 551 F.2d 213, 218–19 (8th Cir. 1977). Collateral estoppel analysis has been applied to the issue of whether a class action can be maintained. *See id.* The parties do not dispute this, nor do they dispute that the Ninth Circuit's order meets the "valid and final judgment" requirement. *Cf. id.* at 219–20 (class action determination entered in action that plaintiff later dismissed voluntarily pursuant to Fed.R.Civ.P. 41(a)(1) is not final for collateral estoppel purposes).

*II. Issues in Ninth Circuit as Compared to Issues Here.*

█ Robins initially argues that collateral estoppel does not apply because the Ninth Circuit did not determine that a nationwide punitive damages class based on the existence of a limited fund could *never* be maintained in the Dalkon Shield Litigation. Rather, Robins contends, the Ninth Circuit only determined the question based on the record before it, while the class certification issue here arises with a different set of plaintiffs. Thus, Robins argues, the issues presented here are not the same as those presented in the Ninth Circuit.

Robins' argument is not persuasive. The class certification issues in this case are virtually the same as those before the Ninth Circuit:[5] whether a nationwide Dalkon Shield punitive damages class meets the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(1)(B).[6] The fact

---

**5.** Robins does not attempt to avoid collateral estoppel based on the slight differences between the proposed class here and the class at issue in the Ninth Circuit, and the corresponding argument that the issues are not the same as a result. *See supra* note 2.

**6.** It is to be kept in mind that the instant issue is limited solely to that which was before the Ninth Circuit. Nothing in the Court's opinion is intended to, nor should it be construed as addressing the propriety of certifying or refusing

that Robins now raises the same issues in a set of lawsuits that different plaintiffs have brought elsewhere does not, in and of itself, change the nature of the issues involved for collateral estoppel purposes. Indeed, to hold that it does would be to impose a mutuality requirement for collateral estoppel. Mutuality is not, however, a requirement of collateral estoppel—especially where, as here, collateral estoppel is raised in a defensive situation.[7] *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979).

### III. The Ninth Circuit's Decision as to Rule 23(a) Prerequisites.

Robins urges that the Ninth Circuit did not determine that a nationwide Dalkon Shield punitive damages class fails to meet the prerequisites of Rule 23(a). Robins points out that the Court of Appeals considered three of the four prerequisites of Rule 23(a)—commonality, typicality, and adequacy of representation.[8] Robins then correctly notes that, in the Court of Appeals' decision, not one of those three prerequisites was unequivocally found to be unsatisfied by a nationwide Dalkon Shield punitive damages class. Robins concludes that the Court of Appeals could not have decided that the Rule 23(a) prerequisites were not met.

The fallacy of Robins' argument is that it ignores other language in the Ninth Circuit decision. The Court of Appeals itself appears to have acknowledged that the proposed punitive damages class did not present such problems with any one of the prerequisites of Rule 23(a) that the prerequisite was clearly not met. Rather, it found that the *cumulative effect* of the substantial problems with commonality, typicality, and adequacy of representation

precluded such a class from meeting the Rule 23(a) prerequisites:

> We are not necessarily ruling out the class action tool as a means for expediting multi-party product liability actions in appropriate cases, but *the combined difficulties overlapping from each of the elements of Rule 23(a) preclude certification in this case.*

*Dalkon Shield, supra,* 693 F.2d at 851 (emphasis added). The Court has no doubt that this language should receive its plain meaning: that the Court of Appeals found that a nationwide Dalkon Shield class action restricted to punitive damages only fails to meet the prerequisites of Rule 23(a). This reading is confirmed by another passage, which appears in the opinion's conclusion:

> The Court erred in certifying the Rule 23(b)(1)(B) nationwide punitive damages class [because of the procedural irregularities in certifying such a class and because of inadequate evidence on the limited fund issue]. *Even if further proceedings were had on those issues, however, the case would still fail to meet Rule 23(a)'s preliminary requirements of commonality, typicality, and adequacy of representation. Therefore, rule 23(b)(1)(B) class action [cannot be maintained].*

*Id.* at 857 (emphasis added).

Robins argues that such language is mere dicta. It contends that "the Ninth Circuit ... reversed the district court's class certification ... primarily because of the failure to hold a hearing on the existence of a limited fund."[9] It is true, of course, that one reason for the Ninth Circuit's reversal was problems with the district court's determination of a limited

---

to certify a class on either compensatory or compensatory and punitive damages.

**7.** Although it is plaintiffs who raise the collateral estoppel doctrine here, their invocation of the doctrine is "defensive," and "offensive": they seek to estop Robins from getting the relief it seeks (rather than seek to obtain relief against Robins, which would be "offensive" collateral

estoppel). *See Parklane Hosiery v. Shore, supra,* 439 U.S. at 329, 99 S.Ct. at 650.

**8.** The fourth prerequisite is numerosity. *See* Fed.R.Civ.P. 23(a). Apparently no one has ever questioned that the numerosity requirement is satisfied.

**9.** *See* Robins' Memorandum in Opposition to the Application of Collateral Estoppel, at 10.

fund. But that is no basis for this Court to conclude that the Ninth Circuit did not also determine that the proposed class failed to meet Rule 23(a) prerequisites. The language throughout the opinion is consistent with such a finding.

*IV. Effect of Fact that Ninth Circuit's Determination Rested on Limited Fund Grounds as well as on Rule 23(a) Grounds.*

Although Robins does not raise this point, the fact that the Ninth Circuit reversed the district court's nationwide punitive damages class certification on two separate grounds could be considered as undermining the collateral estoppel effect of both determinations. Either determination, taken alone, is arguably not "necessary" for the decision and should therefore not receive collateral estoppel effect, so the argument would run. Indeed, there is authority for the position that where a decision is based on alternative grounds, each of which would suffice in and of itself to sustain the decision, redetermining either ground should not be precluded. *See, e.g., Halpern v. Schwartz,* 426 F.2d 102, 106 (2d Cir.1970) (explaining the rationale for such a position). This position is against the grain of traditional authority, which remains vital in many recently decided cases. *See* 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure,* § 4421, at 204, 204 n. 20 (1981) (citing cases). But the recently issued *Restatement (Second) of Judgments* has also adopted this position in certain circumstances. *See Restatement (Second) of Judgments,* § 27, Comment i (1981). Another authority suggests that it might be appropriate to give collateral estoppel effect to an alternative finding only if it can be readily determined that such a finding reflects a "careful process of decision." 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure,* § 4421, at 208 (1981).

This Court need not decide which of these competing positions is appropriate, however. Even the treatise authorities that generally question the preclusive effect of alternative holdings acknowledge that, where a finding in the first instance has been reviewed on appeal, the appellate finding is entitled to preclusive effect. *See Restatement (Second) of Judgments,* § 27, Comment o; 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure,* § 4421, at 208 (1981) ("Appellate review would automatically satisfy" the standard that a particular finding reflects a careful process of decision).

The Court also notes that giving alternative holdings preclusive effect has been held to be "particularly appropriate" when the original action and the action in which preclusion is sought were pending simultaneously. The possible preclusive effects in such situations are readily foreseeable while the first action is being litigated. *See Winters v. Lavine,* 574 F.2d 46, 67–68 (2d Cir.1978). Here, Robins certainly knew that the class certification determination by the Ninth Circuit could have preclusive effect against Robins in the thousands of other Dalkon Shield cases pending around the Country.

*V. Robins' Opportunity to Litigate Rule 23(a) Prerequisites in the Ninth Circuit.*

Robins does not contend that it lacked a full opportunity to litigate the prerequisites of Rule 23(a) in the Ninth Circuit. Its contentions with respect to opportunity to litigate relate solely to the question of the existence of a limited fund. The prerequisites were necessarily addressed at all stages of the class certification proceedings and the Court has no reason to believe that Robins lacked a full and fair opportunity to litigate that issue.

*VI. Changes in Factual and Legal Circumstances Relevant to Rule 23(a) Prerequisites.*

Collateral estoppel does not apply where the factual or legal circumstances relevant to the issue actually decided in the prior litigation have changed dramatically. *See* 1B J. Moore, *Moore's Federal Practice,* ¶ 0.448, at 839 (1983). Robins' central argument based on changed circumstances relates to the Ninth Circuit's determination regarding a limited fund, not the 23(a) requirements. Nevertheless, Robins does

suggest that one of the circumstances underlying the 23(a) determination—adequacy of representation—has changed substantially. Robins suggests that because new attorneys are involved in this suit, the issue of adequacy of representation is different.

The Court has great respect for plaintiffs' counsel appearing before it in these cases. However, it must reject Robins' conclusion that this represents any change in circumstances so as to render collateral estoppel inapplicable. The Ninth Circuit focused on the unwillingness of plaintiffs' attorneys already involved to serve as lead counsel, the problems of having newly appointed counsel that would be willing to litigate as vigorously as counsel of plaintiffs' own selection, and the difficulty of imposing unwanted counsel upon plaintiffs. It is evident that these problems have not changed; counsel for Dalkon Shield plaintiffs throughout the country have filed affidavits indicating their opposition to the proposed class action. The mere fact that new counsel are involved in this case simply does not constitute the sort of "dramatic change" in relevant factual circumstances that would warrant circumvention of the Court of Appeals' determination.

*VII. Potentially Adverse Impact of the Previous Determination on the Public Interest.*

Robins' final argument is that the potentially adverse impact on the public interest of the prior determination makes collateral estoppel inappropriate here, even if it otherwise applies. There is, to be sure, authority for the view that collateral estoppel should not preclude relitigation of an issue where:

> there is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action....

*Restatement (Second) of Judgments* § 28(5). The rationale behind this exception is that "there are instances in which the interests supporting a new redetermination of an issue ... outweigh the result-

ing burden on the other party and on the courts." *Restatement (Second) of Judgments*, § 28, Comment g. But this exception is very limited:

> ... litigation to establish an exception in a particular case should not be encouraged. Thus it is important to admit an exception only when the need for a redetermination of the issue is a compelling one.

*Id.* In short, the "public interest" exception to collateral estoppel should not be lightly invoked.

Robins has not cited any cases supporting its view that under the circumstances here it is in the public interest to allow relitigation of the issue. Robins has submitted an argument, however: that class certification, if granted, would be in the public interest by facilitating the termination of thousands of lawsuits over the Dalkon Shield that are pending throughout the United States. Robins contends that "the possibility of an award of substantial punitive damages" is the "primary difficulty" in resolving Dalkon Shield claims. Despite Robins' assertion that plaintiffs have not disputed this point, plaintiffs strenuously argue that the threat of "substantial punitive damages" has facilitated, not hindered, the resolution of Dalkon Shield claims.

It is unclear to the Court what the net effect of a punitive damages class certification would be on the ultimate termination of the Dalkon Shield litigation. It is true, of course, that once the total amount of Robins' punitive damages liability is determined with certainty, Robins may be better able to estimate its Dalkon Shield-related liabilities. This, in turn, may facilitate Robins' ability to make reasonable and acceptable settlement offers on pending claims for compensatory damages. The net effect may be to hasten the ultimate termination of the entire Dalkon Shield litigation.

On the other hand, it may take a substantial period of time before the extent of Robins' punitive damages liability to various classes or subclasses of plaintiffs is

determined. In the meantime, at least, the resolution of many claims may be delayed. Further, once that issue is resolved, final resolution of many lawsuits may be further delayed: Robins' incentive to promptly resolve Dalkon Shield lawsuits may be diminished rather than enhanced once the uncertainty of the extent of liability is removed.

Thus, it is unclear whether the combined effect of a nationwide punitive damages class action would facilitate or hinder the ultimate termination of the Dalkon Shield litigation. Even assuming that earlier termination would transpire, the Court must also consider whether earlier termination by means of a nationwide punitive damages class action would be in the public interest. If it were accompanied by greater overall unfairness to plaintiffs, or by greater overall litigation expenses, the "public interest" would not necessarily be well served. In view of both the uncertainty in whether earlier termination would transpire and the uncertainty about whether earlier termination would be in the "public interest," the Court must conclude that Robins has failed to show the requisite "clear and convincing" need for redetermination.

Although Robins has not made the argument, the Court is aware of the possibility that precluding relitigation of the class action question, which was before the Ninth Circuit, may adversely affect both Dalkon Shield plaintiffs not participating in these proceedings and Robins employees and the communities in which they live. In the event of Robins' bankruptcy through a series of substantial punitive damage awards, for example, both groups could be adversely affected. Robins has indicated, in response to this Court's order, that punitive damage claims totaling in excess of 13 billion dollars remain pending.

At this point in the Dalkon Shield litigation, however, this Court cannot, absent speculation, conclude that Robins' bankruptcy will occur. It is even more speculative that such an eventuality would have an overall adverse impact—on either Dalkon Shield plaintiffs, or Robins employees and

their communities—that would justify relitigation of the class action issue. In this regard, the Court also notes that not a single Dalkon Shield plaintiff has come forward in support of a nationwide punitive damages class action. This suggests that plaintiffs themselves are not currently concerned about the prospect of being short-changed on punitive damages. In short, the Court perceives no "clear and convincing need" for relitigation due to the potentially adverse effects of the prior decision on the public interest or on plaintiffs who did not participate in the initial class action determination.

The Court would be remiss, however, if it were to fail to comment that, in its view, there is an obvious danger that amongst the thousands of plaintiffs whose cases are still to be litigated are some who, because of proceedings which precede theirs may capture a hollow victory. There persists in the Court's mind the admonition of the Chief Justice in another context that "One vehicle can carry only a limited amount of baggage."[10] While the instant ruling is required under the Court's view of the law, it encourages counsel for the parties, including those who are not presently before it, to exercise the talent and ingenuity demanded of those of our profession to devise, within the framework of the law, a procedure which will fairly and expeditiously conclude this massive litigation. While an expeditious conclusion is an appropriate goal, it must, if necessary, be subordinated to a conclusion of these matters in a manner which renders justice to all of the parties. The Court stands ready to assist, within its appropriate role, to the end that all litigants receive the benefits of a system of justice which is capable of meeting any challenge. It can, must, and will be accomplished.

CONCLUSION.

For the reasons discussed above, collateral estoppel precludes this Court from reconsidering the issue of whether a nation-

---

10. *Swann v. Board of Education,* 402 U.S. 1, 11, 91 S.Ct. 1267, 1273, 28 L.Ed.2d 554 (1970).

wide punitive damages class action in the Dalkon Shield litigation can be maintained.

An appropriate order will issue.